**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher G. White,<br><br>              Petitioner,<br><br>v.<br><br>M. Gutierrez, Warden,<br><br>              Respondent. | No. CV-23-0180-TUC-JCH (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Christopher G. White's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent has filed a Return and Answer to Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus ("Response") (Doc. 12) and Petitioner replied (Doc. 17). The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

**I.     BACKGROUND**

    *A.     Confinement History and Claim for Relief*

At the time Petitioner filed his Petition (Doc. 1), Petitioner was an inmate incarcerated at the United States Penitentiary in Tucson, Arizona ("USP–Tucson"). *See* Petition (Doc. 1). Currently, Petitioner is incarcerated at USP Coleman II in Sumterville, Florida. *See* Fed. Bureau of Prisons ("BOP") Inmate Locater,

https://www.bop.gov/inmateloc/ (last visited May 20, 2024). In light of Petitioner's incarceration at USP–Tucson at the time of the Petition's filing, this Court retains jurisdiction to consider the Petition. *See Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.") (citation omitted). Petitioner is serving a 360-month sentence for six (6) counts of coercion and enticement of a minor in violation of Section 2422(b), Title 18, United States Code. *See* Response (Doc. 12) Estrada Decl. (Exh. "A"), Inmate Data (Attach. "1") at 3; *see also United States v. White*, No. 1:15-CR-00468-RBJ-1, Judgment (D. Colo. June 26, 2017).[1,2] Petitioner's projected release date is January 4, 2042. *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited May 20, 2024). On April 14, 2023, Petitioner filed a Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. *See* Petition (Doc. 1). Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits. *See id.* Petitioner alleges that he is innocent of the charge of tattooing/self-mutilation because he was attempting suicide. *Id.* at 4. The disciplinary process resulted in the disallowance of twenty-seven (27) days of good time credits. *See id.* at 7. Petitioner urges that Special Housing Unit ("SHU") "Psychologist K. Hermosillo wrote that the Central Office does not support finding a [sic] inmate that trys [sic] to commit suicide should be charged [sic] with a Code 228." *Id.* at 4. Petitioner requests this Court order Respondent to reverse the finding of guilt regarding a violation of Code 228, expunge the disciplinary violation, and return the twenty-seven (27) days of good time credits. *Id.* at 7.

---

[1] Page citations refer to the Case Management/Electronic Case Files ("CM/ECF") page number for ease of reference.

[2] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). United States District Court ("USDC") for the District of Colorado orders and proceedings are proper material for judicial notice. *See Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) (taking judicial notice of orders and proceedings before another tribunal).

### B. Incident Report No. 3646378

On June 30, 2022, Petitioner met with his psychologist due to worsening depression. Petition (Doc. 1) at 4. Other members of his unit team were present during the meeting. *Id.* Petitioner alleges that his "Psychologist told [him] to stop reaching out for help with her, because [his] attempts were making her 'uncomfortable.'" *Id.* Petitioner further alleges that "[a]fter the meeting [he] was extremely depressed and while being escorted back to [his] cell by J. Tate, [his] case manager, [he] yelled to the Locked Down Unit of E-1, 'Don't trust Psychology Department they will only harm you!'" *Id.* This occurred at approximately 9:17 a.m., after which Petitioner "was escorted to the Special Housing Unit [("SHU")] and placed into a holding cell." Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 6; *see also* Petition (Doc. 1) at 4. "While in the holding cell inmate White banged his head against the cement wall creating a laceration to his forehead." Response (Doc. 12), Exh. "A," Attach. "2" (Doc. 16) at 6; *see also* Petition (Doc. 1) at 4. Petitioner contends that he was having suicidal thoughts, "NOT trying to tattoo or mutilate my skin, but trying to kill myself." Petition (Doc. 1) at 4 (emphasis in original). "A SHU LT passed by and saw what [he was] doing, told [him] to stop and transferred him to Suicide Watch." *Id.*; *see also* Response (Doc. 12), Exh. "A," Attach. "2" (Doc. 16) at 6. Later the same date, Lieutenant T. Kehl drafted an incident report, charging Petitioner with Disruptive Conduct–High Most Like 228 – Tattooing or Self-Mutilation in violation of Codes 228 and 299. Response (Doc. 12), Exh. "A," Attach. "2" (Doc. 16) at 6.

### C. Disciplinary Proceedings

On July 3, 2022, Acting Lieutenant J. Espinoza delivered the incident report to Petitioner. Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 6. Lt. Espinoza also investigated the incident and advised Petitioner of his rights. *Id.* at 8. Lt. Espinoza indicated that Petitioner did not make any statement and found "the staff's report of [the] incident to support the incident report code." *Id.*

- 3 -

On July 5, 2022, Petitioner underwent a psychological evaluation "to determine his competency to undergo pending disciplinary hearing, and to determine responsibility at the time of the alleged incident." Response (Doc. 12), Estrada Decl. (Exh. "A"), BOP Psych. Svcs. Inst. Disciplinary Process Rpt. (Attach. "2") (Doc. 16) at 12. K. Hermosillo, Psy.D. noted that Petitioner "is currently diagnosed with Unspecified Personality Disorder and Alcohol Use Disorder, which remain applicable at this time." *Id.* at 13. Dr. Hermosillo found that Petitioner was competent and "d[id] not have a mental disease of defect that would impede his ability to understand and assist in the disciplinary process." *Id.* Dr. Hermosillo further found that Petitioner was responsible and "d[id] not have a mental disease or defect that would render him unable to appreciate the wrongfulness of his acts." *Id.* at 14. Dr. Hermosillo recommended that Petitioner "proceed with the disciplinary process and receive sanctions deemed appropriate by the [Disciplinary Hearing Officer ("DHO")]." *Id.* Dr. Hermosillo noted that the "Central Office Psychology Services Branch does not support the use of sanctions for self-injurious behavior, and recommends the use of treatment interventions to address behavior." *Id.*

On July 7, 2022, Warden M. Gutierrez issued an Advisement of Incident Report Delay(s) to Petitioner, which was also signed by Unit Discipline Committee ("UDC") member, Correctional Counselor B. Byler, and the Unit Manager. Response (Doc. 12), Estrada Decl. (Exh. "A"), Advisement of Incident Rpt. Delay (Attach. "2") (Doc. 16) at 9. The Advisement notified Petitioner that Incident Report No. 3646378 had been suspended on the date that it was written, June 30, 2022, because of his placement on Suicide Watch. *Id.* It further noted that the UDC received the Incident Report on July 6, 2022, the same day that Petitioner was removed from Suicide Watch. *Id.* On July 12, 2022, Correctional Counselor B. Byler provided Petitioner with a copy of the Advisement of Delay. *Id.*

On July 12, 2022, the UDC conducted its hearing on the incident. Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 7. The UDC advised Petitioner of his rights. *Id.* Petitioner provided a written statement.

*Id.* Petitioner's statement urged that the incident report be expunged. Response (Doc. 12), Estrada Decl. (Exh. "A"), Petr.'s DHO Stmt. (Attach. "2") (Doc. 16) at 15. Petitioner outlined his history with BOP mental health services, specifically the June 30, 2022, incident and the events which preceded it. *Id.* Petitioner confirmed that "[t]he incident report tells the rest." *Id.* Petitioner noted that he "was let down by staff[,] [and felt he] shouldn't be punish[ed] for staff neglect of [his] mental health [and] ignoring [his] cries for help." *Id.* The UDC referred the matter to the DHO for further disposition and noted that "[t]he alleged violation (s) is serious and warrants consideration for sanctions other than those available to the UDC[.]" Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 7. The UDC recommended that if the DHO found Petitioner committed the prohibited act, s/he should impose sanctions including a monetary fine, disciplinary segregation, and loss of commissary privileges. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the (DHO) and his rights at that hearing. *Id.* at 10–11. Petitioner indicated that he did not wish to have a staff representative at his DHO hearing or have any witnesses. *Id.* at 11.

On July 19, 2022, Petitioner had a DHO Hearing before DHO A. Estrada. *See* Response (Doc. 12), Estrada Decl. (Exh. "A"), Discipline Hr'g Officer Rpt.—Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 2–5. DHO Estrada noted that on July 12, 2022, Correctional Counselor B. Byler had advised Petitioner of his rights before the DHO. *Id.* at 2, 10. DHO Estrada further noted that Petitioner waived his right to a staff representative. *Id.* at 2–3, 11. DHO Estrada confirmed that Petitioner had not requested any witnesses. *Id.* at 3. The DHO noted that Petitioner stated, "I did bang my head[,]" and that his "[w]ritten statement was also provided that eluded [sic] to admitting the charge." *Id.* at 2.

DHO Estrada noted that Petitioner did not "offer any justification" regarding how the delay in processing the incident report "negatively affected his ability to defend himself at the hearing. Response (Doc. 12), Estrada Decl. (Exh. "A"), Discipline Hr'g

Officer Rpt.—Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 3. DHO Estrada considered the facts presented in the body of the written report; Petitioner's statement that he had "no comment" during the investigation; Petitioner's written statement provided during the UDC hearing; Petitioner's admission to the charge stating, "I did bang my head"; and Petitioner's mental health evaluation. *Id.* at 4. DHO Estrada found the staff member's account of the incident contained in the Incident Report to be credible. *Id.* DHO Estrada also found that in addition to his other admissions, Petitioner "admitted the charge to the DHO and to the psychologist conducting the [Mental Health Evaluation.]" *Id.* Accordingly, DHO Estrada determined that Petitioner "committed the prohibited act of tattooing or self-mutilation or any other offense, Code 228." *Id.* DHO Estrada imposed sanctions of twenty-seven (27) days disallowed good conduct time ("GCT"); ninety (90) days loss of commissary privileges; and ninety (90) days loss of visiting privileges. Response (Doc. 12), Estrada Decl. (Exh. "A"), DHO Rpt.—Incident No. 3646378 (Attach. "2") (Doc. 16) at 4–5. On August 9, 2022, DHO Estrada signed the DHO report, and on August 17, 2022, Officer Fellows delivered it to Petitioner. *Id.* at 5.

### D.     Administrative Appeals

On August 23, 2022, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report No. 3646378. Petition (Doc. 1) at 12. On November 15, 2022, Petitioner's requested relief was denied. *Id*. at 11. On January 10, 2023, Petitioner filed a Central Office Administrative Remedy Appeal to the Director. *Id*. at 13–14. On March 28, 2023, Petitioner's requested relief was denied as untimely. *Id.* at 9. The Central Office's rejection gave Petitioner the opportunity to provide staff verification that Petitioner's untimely filing was not his fault. *Id.*

### E.     The Instant Habeas

On April 14, 2023, Petitioner filed his *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1). Petitioner asserts a single ground for relief arising from Incident Report No. 3646378. *See* Petition (Doc. 1).

Petitioner claims that he was innocent of the tattooing/self-mutilation code violation, because he was "NOT trying to tattoo or mutilate [his] skin, but trying to kill [him]self." *Id.* at 4 (emphasis in original). Petitioner alleges that his "Psychology Record reflects that on 7/5/2022, SHU Psychologist K. Hermosillo, wrote that the Central Office does not support finding a [sic] inmate that trys [sic] to commit suicide should be charged [sic] with a Code 228." *Id.* Petitioner urges that "because my intent was to kill myself because of untreated mental state, and I had no intention to tattoo my body or superficiously [sic] cut myself, I am innocent of Code 228, Tattooing/Self-Mutilation." *Id.* Petitioner seeks restoration of the twenty-seven (27) days good conduct time and expungement of Incident Report No. 3646378. *Id.* at 7.

## II.     ANALYSIS

### A.  *Jurisdiction—In General*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, before proceeding to any other issue a court must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to determine whether jurisdiction is proper. *Id.* at 865.

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location, or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (Section 2241 petition is appropriate vehicle to challenge the

correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

#### 1. In General

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency

consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

## 2. BOP Administrative Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the

Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days. *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

### 3. Exhaustion in the Instant Case

Here, Respondent does not contest Petitioner's exhaustion of his administrative remedies. Response (Doc. 12) at 2. Petitioner began the administrative appeal process after the DHO decision regarding the incident report. Petitioner received a response from the Regional Director denying relief. *See* Petition (Doc. 1) at 2, 11–12. Petitioner subsequently filed a Central Office Administrative Remedy Appeal, which was denied as untimely. *Id.* at 2, 9, 13–14. Accordingly, the Court finds the Petitioner's claims exhausted; however, even if the exhaustion is faulty, it shall be excused, and the Court will reach the merits.

### C. Ground One: Actual Innocence

Petitioner asserts that "because my intent was to kill myself because of untreated mental state, and I had no intention to tattoo my body or superficiously [sic] cut myself, I am innocent of Code 228, Tattooing/Self-Mutilation." Petition (Doc. 1) at 4. Conversely, Respondent argues that "Petitioner received the limited due process the Supreme Court requires in disciplinary matters." Response (Doc. 12) at 6.

In the criminal trial context, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal

proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  In other circumstances, the Supreme Court of the United States "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404–405 (1993)).  "In *Herrera*, the Supreme Court did not specify what showing would be required for a habeas petitioner to make out a successful freestanding claim of actual innocence[;] [t]he Court stated only that the threshold would be 'extraordinarily high,' and that the showing would have to be 'truly persuasive.'" *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (citing *Herrera*, 506 U.S. at 417, *accord id.* at 426 (O'Connor, J. concurring)).  "[A] petitioner's claim of actual innocence in the disciplinary habeas context should equate with the claim of actual innocence in the criminal context[,] . . . [with] the standard for an 'actual innocence' claim [which] is extremely high." *Napoleon v. Babcock*, 2012 WL 1639881, at *8 (E.D. Cal. May 9, 2012) (citing *Carriger*, 132 F.3d at 476–77).

Here, Petitioner's actual innocence claim relies on a misinterpretation of Dr. Hermosillo's pre-disciplinary hearing mental health evaluation report. *See* Petition (Doc. 1); Reply (Doc. 17).  Petitioner admits that he was banging his head against the wall, but asserts that he was "NOT trying to tattoo or mutilate my skin, but trying to kill myself." Petition (Doc. 1) at 4 (emphasis in original).  Petitioner points to Dr. Hermosillo's evaluation to urge that "the Central Office does not support finding a [sic] inmate that trys [sic] to commit suicide should be charged [sic] with a Code 228." *Id.*  This is not what Dr. Hermosillo's report says.  In the Recommendations Regarding Sanctions section, Dr. Hermosillo stated:

> WHITE has been deemed competent and responsible.  It is recommended he proceed with the disciplinary process and receive sanctions deemed appropriate by the DHO.  Of note, Central Office Psychology Services Branch does not support the use of sanctions for self-injurious behavior, and recommends the use of treatment interventions to address behavior.

Reply (Doc. 17) at 4; *See also* Response (Doc. 12), Estrada Decl. (Exh. "A"), BOP

Psych. Svcs. Inst. Disciplinary Process Rpt. (Attach. "2") (Doc. 16) at 14 (emphasis in original). Although Dr. Hermosillo indicates that the "Central Office Psychology Services Branch does not support the use of sanctions for self-injurious behavior," he **recommends** that Petitioner "proceed with the disciplinary process and receive sanctions deemed appropriate by the DHO." *Id.* Contrary to Petitioner's assertion, nothing in Dr. Hermosillo's report suggests that a suicide attempt bars disciplinary action. *See, e.g., Williams v. Thomas*, 492 Fed. Appx. 732 (9th Cir. 2012) (reviewing disciplinary hearing on incident reports arising from prisoner's suicide attempt). Neither has Petitioner presented any BOP policies or other law barring disciplinary actions which arise from a suicide attempt. Accordingly, Petitioner's actual innocence claim must fail.[3]

### D. Due Process

Petitioner did not specifically allege a due process violation regarding his disciplinary hearing. *See* Petition (Doc. 1). Respondent interpreted his claim as one of sufficiency of the evidence and analyzed it under the Due Process Clause. *See* Response (Doc. 12) at 5–8. The Court finds Respondent's construction a reasonable interpretation of Petitioner's claim for relief and will analyze it accordingly.

#### 1. Legal Standard

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Where an illiterate inmate is involved . . . [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of

---

[3] With this finding, the Court is not taking a position regarding the propriety of disciplining an inmate for attempting suicide.

- 12 -

a fellow inmate, or if that is forbidden to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570. Finally, inmates have a right to an impartial decision maker. *Id.* at 571. "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring '<u>any</u> evidence in the record that <u>could</u> support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56) (emphasis added in *Cato*).

### 2. Petitioner's Disciplinary Proceedings

The record indicates and Petitioner does not contest that he received written notice of the charges, a statement of the evidence relied on by the prison officials, and the reasons for disciplinary action. *See* Response (Doc. 12), Estrada Decl. (Exh. "A"), Incident Rpt. No. 3646378 & Discipline Hr'g Officer Rpt. (Attach. "2") (Doc. 12) at 2, 6–8, 10–11. Petitioner did not request any witnesses or seek to present documentary evidence beyond his written statement. *Id.*, Exh. "A," Attach. "3" at 2–3, 11, 15. Finally, DHO Estrada did not take part in the investigation and Petitioner has not challenged that she was an impartial decision maker. *Wolff v. McDonnell*, 418 U.S. 538, 571 (1974).

BOP Regulations instruct that "[t]he DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."

28 C.F.R. § 541.8(f). As discussed in Section II.D.1., *supra*, the "some evidence" standard is "minimally stringent." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Here, the DHO indicated that her decision was "based on the facts, evidence, and [Petitioner's] own admission." Response (Doc. 12), Estrada Decl. (Exh. "A"), Discipline Hr'g Officer Rpt.—Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 4.

The Court finds that the DHO's decision was supported by the "greater weight of the evidence" as she stated in her report. *Id*. Petitioner does not deny that he banged his head against a wall, only that its purpose was not for self-mutilation or tattooing. Furthermore, Lieutenant T. Kehl charged Petitioner with Disruptive Conduct–High Most Like 228 – Tattooing or Self-Mutilation in violation of Codes 228 and 299. Response (Doc. 12), Exh. "A," Incident Rpt. No. 3646378 (Attach. "2") (Doc. 16) at 6. Prohibited Act Code 299 states:

> Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act. **This charge is to be used only when another charge of High severity is not accurate.** The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

BOP Program Statement 5270.09, Table 1—Prohibited Acts and Available Sanctions (emphasis added), *available at* https://www.bop.gov/policy/progstat/5270_009.pdf (last visited May 24, 2024). Thus, the charges levied against Petitioner contemplated that his conduct was not precisely tattooing or self-mutilation, but that was the prohibited act most like the conduct he exhibited. The Court finds that Petitioner's claim is without merit and his Petition (Doc. 1) will be denied.

### III. CONCLUSION

Based on the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. The Court further finds that the DHO findings were supported by "some evidence" as required by *Hill*. Additionally, the Court finds Petitioner did not meet his burden to demonstrate an actual innocence claim.

## IV. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number:

**CV-23-0180-TUC-JCH**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 28th day of May, 2024.

Eric J. Markovich
United States Magistrate Judge